United States Court of Appeals

For the Eighth Circuit

_____

No. 20-3296
_____

United States of America

*Plaintiff - Appellee*

v.

Timothy R. Cessor

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: November 19, 2021
Filed: April 5, 2022
_____

Before BENTON, KELLY, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

A jury convicted Timothy R. Cessor of making a threat against the president, in violation of 18 U.S.C. § 871(a). At the time of sentencing, Cessor had been in custody for about 20 months. The district court[1] sentenced Cessor to time served, a

___

[1]The Honorable Robert F. Rossiter, Jr., United States District Judge for the District of Nebraska.

downward variance from the applicable United States Sentencing Guidelines range of 51 to 63 months. Cessor appeals, asserting there was insufficient evidence to convict him. We affirm.

## I. BACKGROUND

In February 2019, 26-year-old Timothy Cessor lived with his parents in Cheyenne, Wyoming. Cessor, who was frustrated with then-President Donald Trump, broke into a gun safe located under his parents' bed, took a loaded .40 caliber pistol and a magazine, spray painted "Trump" with a line through it on the driver's door of his truck, searched for driving directions to the White House using his phone, and began driving toward Washington, D.C. Cessor's only plan was to drive to the vicinity of the White House and try to put himself in a position to shoot Trump.

Several hours after leaving home, Cessor apparently began to have second thoughts. He called his father on his cell phone while driving in Nebraska. Cessor told his father that he had left to "take care of" Trump. The parties dispute what was said next during this phone call: Cessor's father testified that Cessor told him that he could not carry through with his idea of harming Trump and asked his father which of two proposed options would be best—whether he would be welcome back at home or if he should surrender to law enforcement. Cessor's father urged him to return home for professional help. During the trial, the government presented records from the Cheyenne Regional Medical Center (where Cessor's father brought Cessor after arriving back home) and testimony from a physician's assistant and the clinician who conducted the psychiatric assessment at the emergency room. The records and testimony reflect that Cessor's father indicated that he had to convince or talk Cessor into returning home to Wyoming. Cessor's father testified, however, that he did not remember telling medical personnel this version of events and reiterated that Cessor voluntarily stated that he wanted to come home early on during their phone conversation.

There was virtually no evidence that Cessor had developed a thought-out plan that would have, in reality, put Trump in harm's way. At the close of the evidence, Cessor moved for a judgment of acquittal arguing that the government failed to satisfy its burden of showing a true threat of present or future harm towards President Trump. The district court deferred ruling on the motion. Following the jury's guilty verdict, the district court ruled that while it was a close question, there was sufficient evidence to raise a jury question. This appeal followed.

## II.    DISCUSSION

We review a challenge to the sufficiency of the evidence *de novo*. United States v. Dierks, 978 F.3d 585, 589 (8th Cir. 2020) (citation omitted). In reviewing the record, we draw all reasonable inferences and resolve all evidentiary conflicts in favor of the verdict. Id. Cessor contends that the evidence was insufficient to establish a "true threat" of intent to injure presently or in the future because at the time he conveyed his thoughts, they were past thoughts of intent to harm that he no longer intended to act on.

Cessor filed a motion *in limine* to exclude medical records from the Cheyenne Regional Medical Center on the grounds of relevance, unfair prejudice, and hearsay under Fed. R. Evid. 401, 402, 403, 801, 803, and 807. At the pretrial conference, the district court sustained the motion, in part, and denied it, in part, ordering the government to redact the portions of the records that stated "apparently [Cessor] has intentions of murdering Donald Trump" and any reference to police statements or police conduct while at the Cheyenne Regional Medical Center. The district court left undecided defense counsel's alternative request for a limiting instruction, requiring counsel to propose suggested language at the appropriate time in the trial. Cessor has not appealed the district court's *in limine* ruling.

Cessor argued to the jury that his statements to his father while he was talking to him on the phone in Nebraska recounted past, but by then abandoned intent to do injury or harm to Trump, and that the medical records did not accurately recount the

events or conversations. The jury was instructed that government had the burden of proving beyond a reasonable doubt that: (1) on or about February 4, 2019, in the District of Nebraska, Cessor said words alleged to be a threat against the President; (2) Cessor understood and meant the words as a true threat; and (3) Cessor knowingly and willfully said the words. As to the statements other people testified Cessor made regarding his intent to harm Trump, the district court instructed the jurors that it was for them to decide whether Cessor made the statement and, if so, how much weight to give the statement.

The district court gave the jury a limiting instruction regarding the Cheyenne Regional Medical Center records, which stated:

> You may consider evidence of those statements made at the Cheyenne Regional Medical Center *only* for the limited purpose of deciding whether the defendant had the state of mind or intent necessary to commit the crime charged in the Indictment. You must not find the defendant guilty for making a threat against the President in the *District of Nebraska* as charged in the Indictment based solely on a statement he allegedly made in the Cheyenne Regional Medical Center in Wyoming. You must find that the threat was made in the *State of Nebraska*.

We have defined a "true threat" as a "statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another." Doe v. Pulaski Cty. Special Sch. Dist., 306 F.3d 616, 624 (8th Cir. 2002). To sustain the conviction, there need only be evidence from which a reasonably jury could find that the "statement was serious, not literal or even intelligible." Dierks, 978 F.3d at 590. A jury is permitted to "draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission." Id. (quoting Rosemond v. United States, 572 U.S. 65, 78 n.9 (2014)).

While we are mindful of the broad discretion given to prosecutors in carrying out their duty to enforce criminal statutes, this case is troubling because the only substantive evidence that Cessor had a present or future intent to harm Trump while

-4-

in Nebraska was based on hearsay statements recorded in an emergency room in Wyoming hours after Cessor abandoned his plan to go to Washington, D.C. Cessor, however, has not appealed the district court's ruling on the admission of the medical records. And, even if the evidence is barely sufficient, a jury's determinations on witness credibility and resolution of inconsistent testimony are virtually unreviewable on appeal. <u>United States v. Hodge</u>, 594 F.3d 614, 618 (8th Cir. 2010) (citations omitted).

It was within the jury's discretion to credit the medical providers' testimony as well as the statements in the medical records that were admitted at trial. We are not free to reweigh the evidence and are without authority to reverse a conviction as long as there is sufficient evidence in the record from which the jury could reasonably conclude that Cessor committed the charged offense. Because there was sufficient evidence from which a jury could find a "true threat," the conviction must stand.

## III.   CONCLUSION

The judgment of the district court is affirmed.

_____